May I please the court? Yes, sir. My name is William Gavris and I do represent the appellant Mr. Cepeda. I think I'd begin by noting that in this context of a downward adjustment for one's role in the offense, there's the court, an appellate court usually respects a generalized finding of the trial court in this regard. So the trial court normally doesn't have to make particularized findings, specific findings regarding relative culpability. However, where there is evidence that the court misapplied the law, this deference should not be given and is not given. And this principle was recognized in the government's brief at page 10 and also submitted by us. Where there is evidence in this case that the government, I mean that the court misapplied the law is the court's reference. And when you take it in context, it does seem that the court considered the count the defendant pled to attempted possession with intent to distribute as if not completely disqualified as a factor that the trial court considered. And we point that out in our brief. I think within the context, that certainly constitutes evidence that the court misapplied the law. And for what it's worth, when the defendant attempted to bring this to the court's attention, the court said it did not want to hear an argument on the issue when we specifically stated that we believe the court was misapplying the law. And I think it's pretty obvious that this is what we were going towards. The court refused to hear. If I can ask, as I read the district court's statement, there's essentially two sentences of explanation here. The first is the one that you're referring to where he says he pleaded guilty to attempted possession with intent to distribute. And then the second is all of the facts even admitted by the defendant don't make him a minor participant. So my question is, if we didn't have the first, if all we had was the second, would it be your view that that was an insufficient explanation or in some way deficient to allow the application of the or to allow the denial of the reduction? Your Honor, based upon the case law in the Ninth Circuit, I think that that would, if the first statement had not been made, it would have been, the second statement alone would have been sufficient because it's just a generalized finding, which apparently this court accepts, although this court also encourages courts to make specific findings in this context as well. So there's a certain tension. But if that's the case, then, I mean, the first statement, you don't dispute it. It is a correct factual statement of what the offense was, right? And it doesn't say, you know, because he was convicted of that, I'm denying it. Why shouldn't we read it as sort of just essentially kind of, you know, throat clearing, like starting out by laying out some facts and then getting to the reasoning in the second sentence? Well, Your Honor, you know, when I argue with my wife, sometimes I try that. I say, well, what I said was a factual statement. And she points out to me that, well, within the context of what you said and where you said it in the record, you know, you're an idiot. And so this is what my wife says. But I think her point is well taken here, is that it's within the context of everything that was said. I have no doubt that the court considered this. We could speculate that the court didn't. But I don't think it's speculation to say that the court did consider it.  So assuming that it wasn't throat clearing and that the court was relying on both because it did have an and that connected the two, what is wrong with it might be? Obviously, our case law is clear that you can't just rely on the offense itself for the enhancement. But what is wrong with pointing to the offense and relying on it in some sense but relying on other stuff too? Why is that impermissible? Well, sir, because we don't know what weight the court gave to the first part, which is a misapplication of the law. And the government in its brief did not address that. It talked about abuse of discretion. But it never took the correct approach, which would have been to say exactly what the court should have said, which is, well, there's even assuming that this was an incorrect consideration by the court, you know, it's harmless error. And the government didn't make that argument. And I would submit that we simply don't know that. And that's why the court case should be remanded. I could answer a slightly different question. I'm not saying if the first part was error and the second part was allowed, right? I think you've already acknowledged that the second part is fine. If the first part is not error but it doesn't really move the ball, in other words, mentioning it is not somehow error, just the fact that you mentioned that I'm noticing as a judge what the offense was and I'm noticing these other factors. If mentioning it is not error, and so that wouldn't implicate a harmless error analysis where we couldn't tell how much the judge is relying on the wrong part, then what is wrong with mentioning even if, let's just say it's a neutral fact, a neutral fact, and then mentioning other things that would support, that would permissively support? How does it somehow taint it to mention a neutral fact? I guess your position would be it's not a neutral fact, but why isn't it a neutral fact, if that's your position? Yes, sir, and I think that goes back to the first question that was posed to me. It's not a neutral fact, and why isn't it a neutral fact? Because within the context of how it was brought up twice by the court, it seemed like the court was relying upon it to some extent. It's not an instance where the court just began its findings by saying, okay, defendants pled guilty to this, now let's go on and analyze these factors. No, it was smack dab in the middle of the analysis. In a 2008 case, we say, Tankersley, we say a district court shall consider all conduct within the scope of Section 1B13, not just the conduct cited in the count of conviction. But, I mean, that seems to indicate that you would. I mean, you can't really, you have to in a sense consider the actual conviction conduct also, right? You can't just like put that out of your mind. So, in other words, I'm having trouble seeing where, I see where you can't just rely on the facts that led to the conviction as a basis to not give a downward departure. But, I don't see what's wrong with relying on them in part or being aware of them in part, as long as there's other stuff. Judge, I think, yes, sir, I think we're really actually rehashing what we've already talked about, and I mean that respectfully. If it's seen as just a statement that the defendant pled guilty to this count, if that's all it's seen by and there's no evidence to the contrary, then, Your Honor, you're right. Well, let me try to put numbers. Let me say if we knew somehow that the judge is relying 50% on just the fact of what this conviction was and 50% on the other stuff, why would that not be okay? Because 50% of a neutral fact doesn't seem to be problematic to me. You see what I'm trying to get at is why, even if we assume that the judge relied in part, as long as the judge wasn't relying entirely on just the facts of conviction, then why is that problematic? That's what I'm trying to figure out. Of course, if the judge relied upon it in this context, then it's not neutral. It's not a neutral fact. It's a fact that moved the ball, as the metaphor you used. Why? Because we don't know to what extent he made his decision. His decision would have been otherwise had he not moved the ball with the impermissible factor. Do you want to reserve the rest of your time? I do. I appreciate that. Thank you. We took you into your rebuttal time, so we'll give you two minutes, and we'll hear from the government. Good morning. Ben Petersburg, appearing on behalf of the United States. May it please the Court. We ask that the Court affirm Mr. Cepeda's sentence because the district court's denial of the request for a minimal rule of downward adjustment was supported by the record and was not an abuse of discretion. The panelist's primary argument seems to be that the district court applied the wrong legal standard when it denied this request. However, there's really nothing in the record to support this argument. Well, there's nothing in the record to support anything about what the district court was doing other than mentioning the offense. Admittedly, the court was extremely brief, and in part that's why, correct, there's nothing in the record to support that. He said something about adopting what was in the pre-sentence report. What was in the pre-sentence report other than the offense that would have made a difference? In the pre-sentence report, there's also an addendum that responds to some objections to the pre-sentence report. And in those objections, defense counsel asked that the United States Probation Office apply this downward adjustment, and the probation office denied that request and offered some explanation in that addendum. But I want to go back. I think what the panelist is asking this court to do is to read error into the court's silence on the legal standard. But that's actually the inverse of the rule, which is that we presume the district court knows the law and is applying the correct standard. And we get that in Cardi and in Diaz, the cases cited in the briefs. In addition to that, the correct standard referring to the factors in the guidelines and the obligation of the court to compare Cepeda's culpability to that of the co-participants is also found in the defendant's written objections to the pre-sentence report found at ER 56 through 58 and presented by his counsel during argument at the sentencing hearing found at ER 23 through 35. So in addition to the presumption that the court knows the rule and is applying the correct standard, we see that the correct standard was also introduced through those written objections and through the arguments of counsel. Now, Appellant also argues that assuming the court did rely to some extent on the fact that Mr. Cepeda did plead guilty to a particular offense, that is error, and he relies on U.S. v. Webster for that contention in the brief. But the case doesn't stand for that proposition. Webster holds that the sentencing court can't limit its consideration to the offense of conviction, that it, in fact, must also consider all other relevant conduct and any extended conspiracy that also involves the offense of conviction. So necessarily the court must consider the offense of conviction itself as well as any additional relevant conduct. What's the additional relevant conduct here, aside from the fact that the district court didn't mention it? Well, the court did say in its explanation, a very brief explanation, that the facts agreed to or admitted by the defendant, Cepeda, also support the contention that he's not a minor participant in the facts. And those are? In the PSR, Mr. Cepeda made significant statements to law enforcement, and he admits that he knows the scope and structure of the drug trafficking enterprise. He talks about the leader of the enterprise, who he identifies by his initials as A.J. He says he coordinated directly with this individual. He indicated that A.J. had numerous other people like himself receiving drug packages in the mail throughout the Guam. I'm sorry, Your Honor? I'm reading the response to the objection. It's not in there. So where are you talking about? In the offense conduct section itself in the PSR, Your Honor. It quotes the Cepeda's statements, well, not quotes essentially, but summarizes Cepeda's statements to law enforcement and also refers to some of the reports of investigation from the investigative agencies. Now, circling back a little bit, I would say if the court had only relied on the offense of conviction itself in denying this downward adjustment, we would certainly be in trouble. But we contend that's not what actually happened here. You know, if we look at the transcript itself, the court did say, I am also relying on Mr. Cepeda's statements and the facts that he agreed to, which would include the stipulated facts in the plea agreement as well as the undisputed facts in the present report itself. And if we look at those facts, I think we can see that the court's denial of the downward adjustment is actually well supported by the record. Mr. Cepeda, you know, as I said, identified the leader of the organization, talked about numerous other people receiving drug packages. Now looking at the offense, the part of the PSR that talks about the offense, basically he talked about he received packages and he forwarded them on and he knew that there was some gang and he went to some bar. I mean, what was there in there that made him more than a minimal participant? Sure, I think it's his knowledge of the scope and structure. He's identifying the leader. He's identifying numerous that he knows there are numerous other people. But why does that make him more than a minimal participant? Well, that's one of the factors that the court is required to weigh under 3B1.2. And it's one of five. It's knowing the scope and structure. And I think he pretty clearly does understand the scope and structure of the organization. Now some of the other factors are the extent to which he is involved in planning or organizing the criminal activity and exercising decision-making authority. And I think it's fairly limited to that extent. His response, he does open a postal box to maintain the packages. He did provide his deceased sister's name for use as the addressee on the charged package, presumably to try and mask his own involvement or for some plausible deniability. And he actually opened the packages to verify the contents of them before he turned over the drugs to an intermediary for the leader, AJ. The fourth factor talks about the nature and extent of his participation in the commission of the criminal activity. And he admits that the charged package was actually the third drug package he had received that month and that a fourth package was still in the mail at the time of his arrest. As I said, he admits he actually opens the packages, so he knows the contents. He knows that they contain several pounds of methamphetamine. He told investigators he coordinated directly with the leader of the operation and was paid $4,000 per package. I think it's also important to note that Mr. Cepeda had significant criminal history. He is a Tier 1 sex offender. He has multiple convictions for burglary, and perhaps most significantly for this case, he was arrested in 2018 by Guam local authorities after he sold approximately 28 grams of methamphetamine to an undercover in a controlled buy. That's found in the PSR on page 14. And while he later pleaded guilty to a possession charge as part of a plea agreement, what that tells us is that Cepeda had previously been involved in drug trafficking. He's familiar with it. He's a knowing participant in this case in a drug trafficking enterprise, not merely a naive or unwitting courier or mule. The final factor asks about the degree to which the defendant stood to benefit, and here obviously he said he was paid $4,000 per package, which is not a nominal amount, especially in relation to the quantity of the drugs. Isn't the district court supposed to compare him to the other participants? Yes. Yes, Your Honor. Did he do that? Did the PSR do that? Did anything do that? I don't think anybody did it expressly on the record. I think defense counsel did make an effort to do that in argument at sentencing, particularly at ER 32 where he did discuss the other participants involved. And I think the defendant, in his objections to the PSR, made some effort to at least refer to the other participants involved in the offense of conduct. That finding was never done by the district court or by the probation. Not by probation in writing, no, Your Honor, and not by the court expressly. Not by the district court, which only said it was relying on the probation. Well, he said he's relying on probation, and he's relying on Mr. Cepeda's own statements. The court, you're correct, does not make specific findings on the record, although under this court's case law he's not necessarily required to do so. I thought he said just that he was relying on the offense and the PSR. When he explained the, I mean, just generally what guideline he was accepting, I don't even think he even mentioned the minimal participant. He did, Your Honor. In his explanation, he does say, and I can try to get you the cite here, ER 38, all the facts even admitted by the defendant. Thank you. Thank you, Your Honor. That's exactly it. Who bears the burden on this sort of how culpable am I vis-a-vis everybody else? Who bears the burden on that? It is the defendant's burden. Because this comes up in various cases. I'm trying to think. In this case, the defendant, obviously there's this, I think, A.J. character who's obviously in theory higher up than. Yes, sir. Who else did the defendant talk about? He talked about, he said there were numerous other individuals like himself who were receiving packages on behalf of A.J. throughout the island. Who else? And so those people in theory would be at his level of culpability. Who else was there? I agree. There were some intermediaries. There were people that he handed the drugs off to in exchange for cash. He said he used some kind of code word to make sure they were A.J.'s people before he handed those off. Are they more culpable? I don't know that we have enough information to say what their role is necessarily. If those were the people who packaged the drugs for resale at that point or if they were simply handing them off to A.J., it's not in the record. And presumably, although it wasn't mentioned, presumably there are people in the mainland United States who were packaging the drugs and mailing them to Guam in the first place. And I think they would be fairly close in culpability to Mr. Cepeda himself. Not that I'm responsible for reweighing the evidence, but I think based on these facts it would be reasonable for the court below to find, and I do see that I'm over my time and I'll try to wrap up here very quickly, Your Honors, it would be very reasonable for the court to find that Mr. Cepeda was not substantially less culpable than the average participant. He's closer to the average himself. And, Your Honors, we would ask that the court affirm Mr. Cepeda's sentence. Thank you. Mr. Gavras. Thank you. I would like to focus on E.R. 38. The three sentences I think had issue. I don't think that he's – this is the court. I don't think he's a minor participant. He pleaded guilty, attempted possession of 50 or more grams of methamphetamine hydrochloride with intent to distribute, and all of the facts, even why the defendant, don't put him as a minor participant. Of course, it's that second sentence there that I read that we believe is problematic. If the court had said he was involved in a criminal enterprise of distributing methamphetamine, then I believe the court would have been fine. But because the court now for the second time is reciting to the count of conviction in the middle of its rationale for why he's not entitled to it, we believe this goes directly against Webster. What about this question of comparing him to the other participants? Your Honor, I'm glad you brought that up. That was going to be my second point. The five factors that are set out, this court in Diaz, which the government cited, made clear that those factors are to be considered as touchstones for relative culpability. So you just don't look at the factors, but you use that factor, for instance, knowledge. How much knowledge does he have of the entire thing? Do other people have more knowledge? The government just goes with the first step. Was he making money? The answer is yes. It then doesn't ask how much were other people making. The government stated kind of the $3,000 a pop may not be that much. Well, it is if everybody else is getting $2,000. But it's not if everybody else is getting $300. Did you put in evidence that, I mean, it's your burden, so did you put in evidence of what anybody else was making? It seems to me like presumably AJ was making more money, but I don't know how anybody on this record would know what anybody was making except for one of the many other people involved. No, we did not, Your Honor, but I'm bringing that up to show that the government is misapplying the five factors. If it's going to rely upon any of the five factors, those five factors must be addressed relative to the other participants. Instead, the government just looks at the factor, and that's where the problem is. This court came out with a more recent decision in August, which discussed Diaz, which unfortunately neither party cited. It's actually a published decision. But Diaz is quite clear. Mr. Evers, you're over your time. If you want to wrap up briefly. Judge, thank you for your consideration. Thank you very much. We thank both counsel for their arguments in this case, and the case is submitted.
judges: BERZON, MILLER, VANDYKE